June AP Funding, the Federal Deposit Insurance Corporation, case number 25720. Good morning, Your Honors. May it please the Court, Sharon Nirmal for the Plaintiff Appellant. With permission, I'll reserve three minutes for rebuttal. The underlying case is a securities fraud class action. My client, AP7 or Schindler AP Funding, is the lead plaintiff in that action and brought the case to recover losses on behalf of the investors in Signature Bank. Signature Bank is one of the largest bank failures in history, and the bank failed from a liquidity crisis brought upon by irresponsible risk management by the officers of the bank. The case is brought against those officers as well as KPMG, the public auditor of the bank, and alleges that the defendants made false statements and omissions about the management of Signature's liquidity risks during the class period. May I ask a question? Yes. So this matter was dismissed for lack of subject matter jurisdiction? That's correct, Your Honor. So the judge, Judge Block, held that because, based on the FDIC's argument, that the FDIC succeeded to the direct claims of the shareholders in the underlying action, that the Court was stripped of subject matter jurisdiction over these direct claims. Why is that a matter of subject matter jurisdiction as opposed to a merits-related matter? So this is the argument that the FDIC pursued below, that the FIREA, the federal statute that entrusts the FDIC to manage the affairs of the failed bank, has exclusive authority over the claims asserted by the shareholders, and therefore, under the operation of the succession clause, the Court is divested of authority to adjudicate the direct shareholder claims. That was the argument by the FDIC, and the Court accepted that. And you don't really respond to that part, do you? Well, we disagree that FIREA operates to eliminate subject matter jurisdiction. Would it be enough, for example, for us to just say if we agreed or if we disagreed with Judge Block that this was a subject matter jurisdiction issue as opposed to a merits-based cause of action issue, then we should just send it back for him to determine the merits? Because he didn't determine the merits in one sense. He determined jurisdiction. That's correct. So the merits with respect to whether plaintiffs have stated a claim against the directors and officers was an issue never reached by the Court because when the FDIC intervened in the action, it argued that the Court can't reach the merits of the underlying fraud claims against the officers and directors because the FDIC owns those claims. And therefore, the Court should adjudicate whether or not the FDIC owns those claims before reaching the underlying merits. We disagree. Was it framed as a standing question, though? It was. You framed it just now, explaining the district court's decision, as the district court declaring it lacked authority as opposed to the district court finding that the named plaintiffs lacked standing because the FDIC had succeeded to their claims and they no longer had them. Right. And it wasn't a question of standing because the named plaintiffs, as investors, suffered losses. Are you saying you don't believe the district court found it was an issue of standing or you disagree that it was an issue of standing? The district court found that it was an issue of subject matter jurisdiction, not standing. And subject matter jurisdiction because under the FDIC's interpretation of the statute, subject matter was divested from the district court because the FDIC owned the claims. That's my understanding of the district court's decision. It was a 12-v-1 dismissal. Yes. Subject matter jurisdiction. That's correct. And so the court reached that conclusion because the FDIC argued that under FIREA and the succession clause in FIREA, with respect to specific language that states that with respect to the rights of a stockholder in the assets of the institution. You have an argument about what with respect to means, right? Well, a couple things. One is the FDIC succeeds to the rights of stockholders with respect to the assets of the institution or the institution. And what does that clause mean? Traditionally, the circuit courts have looked at it in two ways. One is understanding under kind of basic Hornbill corporations, well, what are the rights of shareholders with respect to the assets of the corporation, the courts have thought about it as a derivative-direct distinction and have held that with respect to derivative claims where the stockholder is looking to recover a harm suffered by the corporation, i.e., stepping into the shoes of the corporation and seeking a remedy on behalf of the corporation. Those derivative claims are succeeded to by the FDIC. That has been the law of the Third Circuit, the Fourth Circuit, the Seventh, the Ninth, the Tenth, the Eleventh. All employ this derivative-direct test as a shorthand way to understand what claims are succeeded to by the FDIC under Ferrier. The FDIC argued that the Zucker case was a departure. Yeah, one circuit going against you. Yeah. But again, not actually going against us because what the Zucker court, the First Circuit, was concerned with there was there was an unusual situation where the sole shareholder of the bank, of the bank company, was seeking a remedy as on behalf of that asset to recover against mismanagement claims by the directors and officers of the company and alleged that because it was a sole shareholder, it had suffered a loss because the assets of that bank had been harmed. And the Zucker court found that while there isn't a direct derivative test within the language of Ferrier, the proper inquiry in that situation to give purpose to the statute's language is to look at what the source of the harm is. And if the shareholder is looking to recover for a harm caused to the corporation, then that claim in the first instance belongs to the FDIC. And that's – and the Zucker court made very clear in its language that this was a narrow holding in this particular situation and that specifically said this doesn't apply to securities fraud claims. Wouldn't the – wouldn't Congress have said on behalf of the institution or, you know, to recover the – you know, why – but with respect to is a pretty broad phrasing, why are we supposed to read that to mean less than sort of in anything touching or regarding? I think this court in Adado has said that you have to give – you have to give meaning based on the context of the statute. Now, with respect to those words, succeeding to the rights of a stockholder means that the stockholder must have possessed of some rights vis-à-vis the institution, right? So what kind of rights do stockholders have in a corporation? They don't have securities fraud claims. These are claims to vindicate the rights, step into the shoes of the corporation if there's waste, if there's misfeasance by office and directors that cause the assets to be diminished, if there's a breach of fiduciary duty. Those are the traditional rights recognized under state corporation's law that are vested in a stockholder, not a securities fraud claim. So I think you have to give meaning to that language in the context – Well, not a securities fraud claim, right, against – you're saying – Against the officers and KPMG, right. There are these D&O policies that I take it are going to be paid by ultimately by, you know, the successor that would have been paid by signature in this case, right? So how do you deal with that? So let's split that into two questions because, number one, there's a claim against KPMG, so there's no implication of any D&O policies. The remedy that we would be seeking on behalf of the investors in the stock would be from the offers of KPMG, right? No, I understand that. And so with respect to the D&O policy, first, the case law is that those are not – that's not an asset of the bank holding company. The D&O insurance policy in earnest to the benefit of those who are covered were the directors and offices of the company, right? So that's not an asset, and I think the law – and this was actually adjudicated in the bankruptcy case with respect to a challenge by the FDIC over the use of the insurance policy by the D&Os in the bankruptcy case to defend themselves. And the court there found, as it ought to be given the case law, that the insurance policy is not an asset of the estate. But I don't think that speaks to, in any event, the issue of whether the succession clause can be interpreted to – can be interpreted to essentially vaporize the securities fraud claims against the offices and KPMG. The other point I want to make with respect to what the remedy here is, it's also against the assets of the individual director defendants, right? So even if the insurance policy has been used up, you know, and even if there was a debate about whether or not that asset is available, you know, to compensate investors, the case is proceeding against the assets of the individual directors as well as, obviously, KPMG's assets. That's the idea. Am I right procedurally, but you can feel free to correct me if I'm completely wrong, that initially the suit was against the bank and then that was dropped and it was only against or maybe some of the individual officers were added as defendants instead, right? So under the statutory scheme which governs the securities fraud case, this is the PSLRA, there were initial complaints filed soon after Signature collapsed. There was a process by which a lead plaintiff was selected, which is our client who had the largest financial interest in the case, and then because the bank was in receivership and couldn't be a defendant, the claims against the bank were dropped. And instead, our client filed a proof of claim with a receiver with respect to its claims against Signature Bank, as the statute requires, right, and proceeded to file a complaint only against the officers and KPMG because it could not proceed with a claim against Signature because it was in receivership. There's an analogy, obviously, in bankruptcy law as well. If you have a bankrupt debtor and there's a securities fraud, a parallel securities fraud case, the claims against the bankrupt debtor are stayed and are dismissed because you can't bring those claims and the claims proceed against the directors and any other actors who are responsible for false statements or fraud. Does this turn at all, just to go back to an initial question, on the FDIC makes an argument about the capacious nature of the term with respect to as really meaning concerning or concern. Does that? So I think if we go back to Judge Block's analysis of this, you see why that analysis doesn't really hold up. In accepting that proposition by the FDIC, Judge Block said, well, with respect to must mean, if you look at the underlying complaint, as long as the plaintiffs have mentioned in any way the assets of Signature, then that claim belongs to the FDIC. Well, that's not really logical. And when you scratch the surface, how does that really, how do you implement that particular rule? Because in every context where FIREA is invoked, you will have a bank that has collapsed. Its assets, by definition, would have been impacted. So what Judge Block's rationale and I think reasoning is, is that it necessarily implies is that every securities fraud claim, because of the nature of the claim. There are misrepresentations here, the alleged misrepresentations and misstatements.  That are the subject of these securities fraud claims. Do you concern the bank? And obviously it had an effect on its assets. So would you agree to that, that they concern the bank and the bank's assets? Well, let's, if you want to put a fine point on this, I think the answer is no. Because what are the bank's assets? Right? They're not the deposits by the depositors. That's the bank's liability. And let's go back to basic corporate finance here, which I think the Court overlooked below. The bank's assets are what the bank has invested in with the deposits that the depositors have, you know, deposited with the bank. Right? Those are the assets. You look at the balance sheet, there's liabilities, the amount it owes to the folks who've deposited. Did you mention this argument? Yeah, absolutely. We did. Which is what? That is that even if it concerns, does it concern the assets? And so Judge Block's reasoning is that so long as assets are mentioned anywhere in the complaint, right, because there's a risk management failure by the executives at the bank, those risk management failures necessarily harm the assets of the bank, and therefore the claim relates to the assets of the bank and is succeeded by the FDIC. But like I said, every securities fraud claim, by definition, is going to involve some harm to the corporation. But the question becomes, what are the investors seeking to, what are the concerns of the investors? Are they with respect to the assets? No. They're with respect to the market capitalization, the stock, which doesn't belong to the corporation, that has lost value and has caused losses in their own portfolios. Right? So stock trade in a public market is not an asset of the estate. It's not an asset of the bank. It's an asset of the shareholders in that company. But a significant depreciation in stock price can affect goodwill. It can affect all sorts of, it could have an indirect effect on assets. It could, but again, that value. So if you say it could, why can't I say, why can't the response be, well, it concerns potentially the assets of the bank? The example that, so the question posed by Judge Block in the court below was, is there any claim, would there be any securities fraud claim that would survive the FDIC's proposed standard? Right? And the FDIC suggested that if the company misrepresents an executive's health. Right. Right. That could be a securities fraud case. But remember, the case would only arise if the bank had collapsed. Right? I mean, that would, firea would be invoked because of the. So in that situation even, and I think if you look at Judge Block's opinion, that also collapses, that kind of, you know, case. Because necessarily the health of the CEO would have impacted the value of the enterprise. We have, actually I have kept you well past your time. You have reserved some time for rebuttal. We'll hear from your friend on the other side, Mr. Brooks. Good morning. Good morning, Your Honors. And may it please the Court, I am Joseph Brooks from the FDIC Legal Division. I would just briefly start with the jurisdictional question that Your Honor raised. The District Court here found a lack of prudential standing because the claims were with respect to the assets in the bank. And the Court cited some unpublished decisions of this Court. To show? That indicate that prudential standing is. Of this Court, meaning the Second Circuit, or? Yes. Okay. Yes. Yes. But I think the more recent cases like Hillside Metro sort of show the prudential standing is really not a subject matter jurisdiction issue. But it really doesn't matter here because the Supreme Court has indicated, the cases are cited in our brief, that prudential standing is one of those few areas that a court could consider before subject matter jurisdiction. So that takes care of any jurisdictional issue there. I don't know that it does. Because what I've got in front of me, what we all have in front of us, is a dismissal based on Rule 12b-1. 12b-1 states dismissal for lack of subject matter jurisdiction. I understand that, Your Honor. But there are many, many cases that indicate that when a district court dismisses a case on grounds, on subject matter jurisdiction but the case is properly dismissed for another reason, it is appropriate for the court of appeals to address that. And in the event that this Court would disagree, there is still –  Would you just repeat that again?  Yes. I don't have any cited. The issue did not come up in the briefing. But I have seen cases where courts of appeals have said that where a case was properly dismissed under 12b-6, but it was stated by the court to be dismissed under 12b-1, and especially where that issue is not raised by the appellant, that the court can go ahead and decide the case on the 12b-6 issue anyway. After this oral argument, would you please provide us with a letter?  And the other point I would make, Your Honor, is that even if it were the case, if there is nothing before this Court, because the prudential standing issue was decided as a subject matter jurisdiction issue, indicated by the court to be, that is, there is also before this Court the issue of whether this Court has subject matter jurisdiction due to the failure to exhaust these claims. And, of course, that issue could be raised at any time. And so, you know, with that background, what we would say is at least one of two things must be true. Either AP7's claims are with respect to signature and its assets, in which case the court below lacked, excuse me, in which case the plaintiff lacked prudential standing, or they relate to an act or omission of signature, in which case the court below did lack subject matter jurisdiction. And I'll take those in order, Your Honor. Go ahead. Mr. Brooks? Yes. I have a question for you. If, presumed that the case hadn't been, that there hadn't been the application, and there had been a trial or there had been an adjudication, and there had been a judgment obtained by the plaintiffs against KPMG, you're not suggesting that the bank's assets in any way are in any way involved, are you? I believe that. My question to you was, a judgment obtained against KPMG, are the assets of the bank in any way involved or in any way subject to satisfaction of that judgment? No, Your Honor, I don't believe so. However... How does this remotely with respect to the assets of the bank? How is the action against KPMG in any way remotely with respect to the assets of the bank? Well, first... Because isn't the purpose of the statute to put the FDIC in the position of the bank and therefore manage the gathering of the assets and the acknowledgement of the liabilities and then a payment in accordance with the priorities? That's what receivers do, isn't it? That's part of what it is. But it's also to put the FDIC in the position of a shareholder. The statute doesn't just... But is this a claim against the bank? Is this a claim against KPMG? Well, it's a claim... All of the alleged representations that are alleged in this case... Well, I understand it goes with regard to misrepresentations with regard to the financial status, the financial wherewithal, or the financial well-being of a client. And so it may well be that people relied upon that, but 10b-5 allows people to have claims with regard to those kinds of material misrepresentations. Well, that's correct, Your Honor. It allows... No, I mean... So I don't understand. If there's nothing of the bank that's in jeopardy with regard to a judgment... Now, maybe you're going to suggest to me that there's some other concern in that regard, but I don't understand how a judgment that can't be enforced were a judgment to be obtained. How a judgment that couldn't be enforced with regard to any of the bank's assets in any way is relevant with regard to the resolution of signatures, assets, and liabilities, and the distribution of the proceeds of that resolution among an ordered set of priorities. Because, Your Honor, as the Pareto case out of the Ninth Circuit explained, the rubric that's set up here is simply this. Congress wants a single entity, here they selected the FDIC, to be responsible for handling all litigation with respect to the bank and its assets. One party handles that litigation. And then that same party, after gathering all the assets together, distributes them. And so that's why I asked you. It has nothing to do with the distribution of the assets, the judgment against KPMG, does it? Well, it does, because the claims of the shareholders are assets. The claims of the bank are assets. And the distribution statute doesn't say distribute the assets. It says distribute the amounts that are recovered. So you're saying that because shareholders have the claims, therefore whatever they might receive in a securities fraud class action ought to go to the bank's estate. Yes, to the extent that the reason why the shareholders have that right is because they're a shareholder. Your Honor, the statute, to me, is essential. That's an interesting idea. I didn't realize that 10b-5 plaintiffs owed the corporation money back after they recovered a plaintiff's verdict. Well, what would happen here, Your Honor, is if the- I thought it was because they had losses as a result of an expectation that their stock was worth more than they thought it was. So I thought they were individual losses of their own, not losses of the corporation. Well, Your Honor, the statute talks about quoting all rights, titles, powers, and privileges of a stockholder. Here, the only way that these stockholders could have suffered losses was to be holding the stock during the period of time that the losses were incurred. So these are losses of a stockholder. That's not disputed. The question is whether these losses are with respect to the assets of the bank and the bank. Excuse me. If I had 100 shares of Signature prior to the disclosure of its financial instability, and those 100 shares were worth $100,000, and two days later it's worth nothing, I would kind of personally feel that I was the one who lost 100,000, not Signature. Well, Your Honor, nobody is saying- Wouldn't I be the person who lost the money? Well, sure you wouldn't, Your Honor. It wasn't Signature Bank at all. You would have lost the money as a shareholder in any event. So somehow you're entitled to control that? Well, Your Honor, actually what happens is the real issue here, it turns out, for AP7, isn't the succession clause at all. These claims are not vaporized. They are instead litigated by the FDIC. The FDIC goes, litigates these claims, collects whatever it can, right? And then distributes it to shareholders? Right. It distributes not the way the FDIC determines. It distributes the way Congress has determined. Congress has set forth the order of priority. So Congress's idea is this. This is a paradigm case of what Congress was trying to prevent when it enacted the succession clause. You have shareholders of the bank suing the same defendants for the same misconduct and seeking to recover from the same sources that the FDIC can recover from. In order to prevent that, Congress set up this system in which they're going to have one entity go out and recover all the money possible on all the claims, which of course will never be enough to settle all of the claims because the bank failed. So there's not enough there. So recognizing that all of the claims will not be satisfied, Congress said, listen, we, Congress, not the agency, are making a judgment that once you get all of that money, wherever you get it from, as much as you can get, we want you to distribute it in this way. But if my colleagues' preference of the way this should operate were to prevail, instead what would happen is that a party like AP7 would jump the line. They could run the court and try to beat the FDIC to the deadline. And not only that, all the while they are wasting the assets of insurance policies to pay for the litigation. This is exactly what Congress did not want to happen. It's the purpose for something like the succession clause. And similar issues arise with respect to their failure to exhaust. Because, again, if you read their complaint, everywhere in their complaint about 10, 15 times, it says SBNY, that's Signature New York, issued. They issued the 10-Ks. They issued the 10-Qs. They issued the press releases that included the statements. All of the statements at issue in this case are statements with respect to the assets. And here's a critical point. My colleagues say, well, the critical thing in Zucker was there's something there was an element of the claim. Okay, that's what the court found concerned. It concerned because it was an element of the claim. Here, in order for AP7 to prevail, this case is not going to be about what the misrepresentations were. They're all in documents. They're all in 10-Ks, 10-Qs. This case is going to be about whether those representations were false. This entire case is going to be whether or not, as AP7 alleges, the officers and directors and KPMG committed misconduct that was sufficient to make the representations they made false and misleading. This case is with respect to the assets, and it's almost with respect to nothing else. Just to go back to Judge Wesley's question, Mr. Brooks, about KPMG standing alone. Had the plaintiff, AP7, merely, well, only sued KPMG, let's just say that there is a theory under which it had a viable security trial claim just against KPMG for its misconduct, then could you even have this argument? I'm just – I'm not sure that I understood your answer to Judge Wesley. Yes, but my argument is that you begin with – That's a very capacious, very aggressive argument. Well, no, I don't believe so, Your Honor. You begin with the first step. Nobody's disputing these are rights of shareholders. So the question is with respect to. And just for a second here, there's only been two suggestions in this Court and in this case about what with respect to means. This is – everybody agrees this is an issue of statutory interpretation. The only thing my friend says that with respect to can mean is derivative. They say, look, the reason why they should win is it's a derivative claim. And the Zucker analysis, you just can't look at statutory interpretation case law from the Supreme Court. From this Court, the DiChristina case, it says when interpreting a statute, this Court must assume it has its natural – its everyday meaning. We, you know – So – so – We have in other cases held that the term with respect to understanding every case is different and every statute is different and it's got contextual issues, but with respect to essentially means concerns. Yes. It's a very broad term. Yes. And that's what the Zucker Court said. So on the KB – well, I did want to answer the KPMG question.  On the KPMG question, therefore, because the allegations would be about statements that were – that were in documents, securities law and stuff, that SBNY issued and all of them relate to the assets, that would still be a claim with respect to. And, again, it's not a question of whether the claim is vaporized. That would be a claim that we would take the position, as we do in this case, that is encompassed by the succession clause language that Congress chose. Now, this may be what you mean by the claims vaporizing, but, you know, plaintiffs make this argument that when we take this in context and the FDIC is succeeding to the interests, that that can't make any sense where the FDIC is not empowered to bring the claims that the plaintiffs are bringing. How do you respond to that argument? The FDIC is absolutely empowered to bring the claims. As Zuckerberg explained when a similar argument was made by the appellant there, the succession clause gives all rights, powers, and privileges of the sheriff. So then instead of dismissing, why isn't it a substitution of plaintiff? So, you know, there are times we have a, you know, a trustee substitute for a named plaintiff. Why would that not be what happens if the FDIC is really stepping into the shoes of these plaintiffs and is empowered and enabled to bring all of the same claims? Why is the case dismissed instead of why can't the – why doesn't the FDIC just bring these claims then? Well, the FDIC gets the option. Because the FDIC owns a claim under the succession clause does not mean it has to bring it. The FDIC has not yet made a determination about whether it is going to pursue these claims. It may very well decide to pursue them. It may not. The FDIC's obligation is to get the least cost, most benefit resolution of the entire bank. So the FDIC is in the process of evaluating the claims and may very well be bringing them soon. Had it already determined to bring the claims, which, Your Honor, Judge Merriam, what you suggested would be perfectly appropriate, and typically these cases sort of come up when the FDIC has already brought the claims, and then what happens is the cases are dismissed because it goes forward where the FDIC brought them. But there's no question that the FDIC, having the rights of all of the shareholders, can itself bring and prosecute these claims. It would probably prosecute them at the same time that it prosecuted individual claims. Is there a single case, to go back to the subject matter jurisdiction issue? Yes. Is there a single case on which you align where the dismissal was on 12B1 grounds as opposed to 12B6 grounds? I know you're going to get us a letter. Yeah. But I think that they were all 12B6 determinations. And you're telling me, well, we can, I think you're suggesting that you're going to submit a letter that tells me that we can ignore the fact that you've blocked, dismissed this on subject matter jurisdiction grounds and just go right to the merits, where I'm not sure that he quite did that. Well, Your Honor, it's not right to the merits as an alternative. Prudential standing is not really a merits issue, if you will.  And the Supreme Court has said, I believe, Lexmark, the main case I would cite is Hilltop Metro. So do you really want us to rely on prudential standing, given what's happened to prudential standing in the last 10 years? Yes, Your Honor. I think prudential standing is alive and well. The Supreme Court has made clear that it is. The only issue in the Supreme Court is not whether prudential standing is alive and well. It's whether it's really a part of Article III standing. Well, that's correct. Right. And if the Supreme Court ultimately says it's a part of Article III standing, you see why courts have dealt with this issue this way. If it's a question of prudential standing, and it doesn't in any way deny an opportunity for a plaintiff to reach that. So if we were to disagree, well, I'm not even sure what you're exactly saying, but if we were to conclude that prudential standing is not a concept of a subject matter jurisdiction, some other animal, then your view is we can ignore Judge Block's error, because that would be an error, right, to dismiss it on subject matter jurisdiction and proceed to the merits? Yes, because it doesn't implicate the merits in either event. And as I've indicated, Your Honor, there's a subject matter jurisdiction in front of the Court anyway on the exhaustion argument that we made. Thank you very much. Thank you for your time. And we would ask the Court to affirm. Thank you. Thank you, Your Honor. I think the Court has focused in on I think some of the absurdity of the FDIC's position with respect to how the statutory scheme is intended to work and why it makes no sense to have an absurdity as a last resort of statutory interpretation. I think when you look at the legislative history in this case, and my colleague here has rewritten the legislative history, and I think in pages 40 to 42 of our brief we discussed the legislative history. Congress had always, in the context of passing FIREA, considered the implications for securities cases and recognized the important role securities fraud claims play with respect to bank failures. And there was an argument by the FDIC, the adopters of the statute, that the FDIC should have priority in terms of litigating claims that it may have with respect to the assets of the bank over securities fraud claims. In other words, have priority over any kind of recovery that may be had from the directors' offices before the securities plaintiffs could prosecute their securities fraud claims, and that was rejected. That was rejected because of the importance that the securities fraud claims play in remedying harm, specifically to investors who have no other form of relief under the FIREA statutory scheme. And just like Your Honor, Judge Wesley inquired, with respect to KPMG, why would an investment loss that could be recovered from KPMG that is not a loss suffered by the bank and is not a loss suffered by depositors or creditors of the bank, but suffered by the investment accounts of the investors in the bank, why would a recovery from KPMG inert to the benefit of those depositors over the investors? That's not what Congress intended, you know, by FIREA. It didn't vest with the FDIC the ability to — Is there a case out there, any case in the country, where there's a standalone claim against an entity that is not the bank, but that arguably concerns a failure that's covered by FIREA? Is there a case like that? Well, there are a number of cases that have allowed securities fraud claims to be pursued against the officers of a bank. Howard, for example, in the Fourth Circuit, overturned a dismissal of a securities fraud case based on the succession clause, and finding that those claims should be allowed to proceed. And it's the same situation here. Again, with respect to the assets of the directors and officers of Signature, to the extent we recover based on investment losses, why would those losses then go to the depositors or the FDIC who hasn't suffered that loss? That's not what Congress intended. Thank you, Your Honor. Thank you very much. And so, Mr. Brooks, we'll look forward to receiving a letter from you by this Friday. Is that the end of business? That's fine, Your Honor. Okay, thank you very much. We'll reserve the decision. Thank you very much again.